# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SUSAN S. KREUZMANN d/b/a
    CENTURY HOUSE, et al.,                     Case No. 1:10-cv-50

       Plaintiff,                                  Bowman, M.J.

      v.

SEDA FRANCE,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**I. Factual Background**

On January 27, 2010, Plaintiffs initiated suit against Defendant Seda France, alleging liability for damages from a fire that occurred at Plaintiff's store on November 29, 2008.

Century House is a specialty retail store located in the Village of Glendale, Ohio, and owned and operated by Plaintiff Susan Kreuzmann.[1] As its name would imply, Century House is located within a two-story building that is listed on the National Registry of Historic Places. Linda Skirvin is the manager of the Century House.

Among the items bought and sold by the store were scented jar candles manufactured by Defendant Seda France. Each candle contained the following warning on the bottom of the glass jar:

> Place lit candle on heat resistant surface.
> *Never leave lit candle unattended*.

---

[1] Plaintiff's insurer, Westfield Insurance Group, joins Plaintiff Kreuzmann in this suit.

> Use caution when extinguishing.
> Trim wick to 1/4 inch before using.
> Keep free of foreign objects.
> Stop use when 1/4 inch of wax remains.
> Do not burn more than 3 hours.
> Keep out of reach of children.

See Doc. 43-1 (emphasis added).

On the morning of November 29, 2008, Century House was scheduled to open for business at 10:00 a.m. Ms. Skirvin arrived for work close to 9 a.m., and within ten minutes, opened and lit a new Seda France Pagoda Box "Holiday Scent" jar candle. Before lighting the candle, she trimmed the wick to one-quarter inch.[2] She placed the lit candle directly on a wooden shelf that contained a display of other Seda France candles in the front room of the store, making sure that nothing was overly close to it. After lighting the candle, Ms. Skirvin stocked shelves and straightened merchandise in other rooms of the store, visiting rooms on the second floor of the store twice during the next 30-40 minutes. At 9:47 a.m., Ms. Skirvin went upstairs a third time in order to bring down additional merchandise.

Just before walking upstairs, she heard "a small boom like something falling over" somewhere on the main floor, but she continued her journey upstairs. She did not think anything of the noise because the building was very old, and it was not uncommon to hear things fall. When she returned to the main floor, she first went into the stationary room to

---

[2] Ms. Skirvin allegedly reported to an investigator that she did not trim the wick prior to lighting the candle that morning. (Doc. 45-4 at 15). Both that investigative report and a second report (Doc. 45-1) concluded that Ms. Skirvin had placed the candle on a 6-inch plastic riser on the shelf. However, Ms. Skirvin testified that she did not place the candle on a riser or fail to trim the wick. All disputed issues of fact are construed in favor of the non-moving party for purposes of Defendant's motion for summary judgment; therefore, the Court assumes that Ms. Skirvin trimmed the wick properly and placed the candle directly on the wooden shelf as she testified in her deposition.

2

continue working on a display there. She then heard a crackling sound, and, assuming that someone was knocking on the front door, she walked back toward the front of the store. Encountering smoke as she did so, she saw that the entire top half of the book case where the lit candle was located was on fire. Ms. Skirvin called 911, opened the front door, grabbed the fire extinguisher, and exited the store. Ms. Skirvin then ran back inside and rescued Toes, the resident cat. The store suffered significant fire and smoke damage, and was closed for nearly a year.

There is no dispute that the lit candle caused the fire. A report conducted by an insurance investigator within a week of the fire stated that "an open flame from a lit candle ignited the combustible elements of a candle display on the shelf adjacent to the lit candle. Once ignited the fire progressed upward and outward further engaging the boxes for the candles positioned on the shelf." (Doc. 45-4 at 15). A fire department investigator similarly determined that "the cause of the fire was the ignition of combustibles by an unattended candle." (*Id.* at 16).

### B. Procedural Background

On January 27, 2010 Plaintiff Kruetzman filed suit against Defendant Seda France for negligence, strict liability, and nuisance, based in part on a theory that the warning stated on the candle was defective. The jurisdiction of this Court is based upon the diversity of the parties, and Plaintiff's allegation that the amount in controversy exceeds $75,000. *See* 28 U.S.C. §1332(a)(1).

The original complaint contains four distinct claims: negligence, strict product liability; breach of warranty, and interference with real property rights. On September 3,
3

2010, Plaintiff Westfield Insurance Group joined this lawsuit based upon its subrogated interest as Kruetzmann's insurer, and Plaintiffs jointly filed an amended complaint. (Doc. 19). The amended complaint is essentially identical to the original complaint, except for the addition of Plaintiff Westfield Insurance Group.

First, the complaint alleges negligence based upon Defendant's failure "to properly design, manufacture, assemble, inspect and/or test the candle, and fail[ure] to properly instruct Plaintiff and those similarly situated as to the proper and safe use of the candle." (Doc. 1 at ¶9). The claim of negligence is also based on Defendant's failure to recommend, to determine, and/or to ensure that the candle be "in compliance with Uniform Commercial Code ("UCC") and Underwriters Laboratory ("UL") standards," (*id.*), and alleged violations of unspecified "regulations, protocols, customs, safety practices, and/or standards of care." (*See* Doc. 19, amended complaint at ¶11(f)). Plaintiff further alleges that the Defendant was negligent for distributing or selling the candle knowing that it was "inadequate and dangerous for the reasons for which purchased." (Doc. 1 at ¶9; Doc. 19 at ¶11(a)).

In Count II, based upon strict product liability, Plaintiffs incorporate the same allegations as the negligence claim, and generally allege that Defendant "failed to design, assemble, manufacture, sell, distrubute[] and/or market a properly functioning candle," and that Defendant additionally failed to "properly inspect and/or test" the candle. Plaintiffs also allege that Defendant failed to determine that the candle complied with "applicable" standards, and failed to provide safe and adequate warnings or instructions. (Doc. 1 at ¶¶ 11-21; Doc. 19 at ¶¶13-24). Plaintiffs allege design defects, manufacturing defects, component defects, use-instruction and/or warning defects, and a "failure to warn of the

4

design, manufacturing, and/or component defects." (*See* Doc. 1 at ¶20; Doc. 19 at ¶22).

In Count III, Plaintiffs allege breach of express and implied warranties, and in Count IV, Plaintiffs allege interference with the right of enjoyment of Plaintiff Kruetzmann's real property, or nuisance.

On October 21, 2010, Defendant Seda France filed a suggestion of bankruptcy, resulting in an administrative stay of this litigation. On June 9, 2011, Plaintiffs moved to lift the stay, noting that Plaintiffs had been granted relief from the stay by the United States Bankruptcy Court for the Western District of Texas. Plaintiffs' motion was granted and this Court thereafter entered a scheduling order. (Doc. 31). The parties have completed discovery, and Defendant has now moved for summary judgment.

## II. Analysis

### A. Summary Judgment Standard

In considering a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks and additional citations omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c), internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the nonmoving party, however, does not mean that the court must find a factual dispute where record evidence contradicts wholly unsupported allegations.  After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)).  In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986).  The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added).  The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.   *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, inferences are not to be drawn out of thin air.  Rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244-45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).   To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could

6

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

### B. Liability Based Upon Design, Manufacturing, Assembly, Inspection, or Testing Defect

As Defendant points out - notwithstanding the vast variety of claims based upon inadequate design, manufacture, assembly, inspection, or testing of the candle, Plaintiffs include no factual allegations in their complaint to support any type of claim other than one based upon a "failure to warn." Therefore, Defendant seeks summary judgment on any claim that alleges inadequate or defective design, manufacture, assembly, inspection, or testing. The Court agrees that Defendant is entitled to judgment based upon Plaintiff's failure to come forward with any factual allegations to support these claims, much less any evidence in opposition to Defendant's motion.

Plaintiff argues that Ohio law permits a finding of liability even if Plaintiff can offer no expert testimony suggesting any specific defect. Under *Cincinnati Insur. Co. v. Mr. Coffee*, 1995 WL 517054 (Ohio App. 8 Dist. 1995), Plaintiff contends that when there is no evidence of tampering or abuse, "the malfunction of a part may create the inference of a defect existing at that time of manufacture." *Id.* at *4. In that case, the issue was whether the consumer, despite minimal use, had caused the defect after purchase of the coffeemaker. However, there was unanimous expert testimony that some type of defect within the "throat of the coffeemaker cord caused the fire." *Id.* There is no similar testimony or evidence in this case.

Plaintiffs point to Linda Skirvin's testimony that the candle was new, that the wick was trimmed, and that the candle was placed in a location that was not near combustibles.

7

Therefore, Plaintiffs argue that the only way in which a fire could have escaped in an uncontrolled fashion would have been due to some type of manufacturing defect.

Undermining Plaintiffs' argument is the testimony of their own expert, Dr. Vigilante, who opines that no more than 2% of home candle fires are the result of some type of defect in the candle. (Doc. 43-1 at 10). Notably, Dr. Vigilante does not opine - nor is there *any* evidence in this case presented by Plaintiffs - that the candle at issue had any type of design or manufacturing defect, or a defect of any kind other than one based upon an inadequate warning.

Plaintiffs cannot rely upon pure speculation for the smorgasbord of "defect" claims asserted. As Defendants point out in an argument that harkens to the tale of Mrs. O'Leary's cow, Toes the shop cat as easily could have knocked over the candle to start the fire.[3] While a "*res ipsa loquiter*" type theory might apply to some products in some sets of circumstances under Ohio law, this is not one of them. *Accord Hickey v. Otis Elevator Co.*, 163 Ohio App.3d 765, 840 N.E.2d 637, 642-643 (2005)(granting summary judgment where plaintiff presented no evidence beyond speculation that his injury was caused by a design defect in the elevator, or by any negligence on the part of the manufacturer). Plaintiffs have failed to show more than a "metaphysical doubt as to the material facts" in opposition to Defendant's motion for summary judgment on these claims; therefore, Defendant's motion for summary judgment will be granted.

---

[3] Ms. Skirvin testified that to her knowledge, Toes had never knocked over any objects inside the store before. She had never seen the cat jump up on the display table or on a shelf. Likewise, however, she had never had a problem with a Seda France candle (or any other candle) before.

**C. Failure to Warn Negligence, Strict Liability, and/or Nuisance Claims**

Defendant argues that in addition to being entitled to judgment as a matter of law on the various manufacturing or design defect claims as to which Plaintiffs have failed to offer either allegations or evidence, Defendant is entitled to judgment on Plaintiffs' "failure to warn" claims, because the risk of fire from candles is an open and obvious hazard, such that no additional warnings were required. It is undisputed that Ms. Skirvin left the candle lit without visually checking on it, for at least 30 minutes and possibly as long as 40 minutes. Defendant contends that its express warning to "[n]ever leave lit candle unattended" adequately warned Ms. Skirvin of the potential hazard of this action.

At first blush, Defendant's argument has some appeal. After all, it seems a matter of common sense that a lit candle presents the risk of fire. Under long-standing Ohio law:

> A manufacturer does not have any duty to warn a product user of open and obvious dangers....To this end, Ohio's Appellate Courts have determined that if a product's danger is a matter of common knowledge, or if the danger is open and obvious to the user of the product, then the manufacturer has adequate reason to believe that the consumer will realize the product's danger and a duty to warn will not arise.

*Aldridge v. Reckart Equip. Co.*, 2006 WL 2716696 *20 (Ohio App. 4 Dist. 2006); *see also Bouher v. Aramark Servs., Inc.,* 181 Ohio App. 3d 599, 910 N.E.2d 30 (Ohio App. 1 Dist. 2009)(no duty to warn of open and obvious danger of hot water from coffee maker); *Hanlon v. Lane*, 98 Ohio App.3d 148, 153, 648 N.E.2d 26 (Ohio App. 9 Dist. 1994)("a manufacturer does not have a duty to warn of a product's danger if that danger is a matter of common knowledge or open and obvious to the user of the product.").

Defendant asserts that in most cases, whether a danger is open and obvious presents a question of law. *See Aldridge*, at *20 (additional citations omitted). Although

9

there are no Ohio cases on point, Defendant cites to *Sampson v. Zimmerman*, 151 Ill. App.3d 396, 400-401, 502 N.E.2d 946 (Ill. 1986), as a case in which an Illinois court affirmed summary judgment to a landowner on a negligence claim, on grounds that a child injured when she came into contact with a lit and unprotected candle had encountered an "open and obvious" danger. Even Plaintiff Krueztmann testified that "you need to be aware [of] a candle when you have lit it – lighted it, by checking on it, by remembering it, by making sure you extinguish it? I know that as a safety, as an adult and as part of general safety." (Doc.39-1, deposition at 38).

Upon further reflection and examination of Ohio case law, however, the Court declines to grant Defendant summary judgment on the entirety of Plaintiff's "failure to warn" claim. In response to Defendant's motion, Plaintiffs argue that the "inherent characteristics of a jar candle make the risks associated with its use ...difficult to discern." (Doc. 43 at 5). Plaintiffs' expert, Dr. Vigilante, states that his research has shown that consumers generally believe that lit candles are safe to leave alone in a room while they are in another room of the house, and that consumers have "various understandings of the phrase 'Do not leave unattended.'" (Doc. 43-1 at 10).

Dr. Vigilante first offers opinions on the alleged inadequacies of the location and typeface of the warnings. He opines that Defendant's warning was inadequate because it did not include an adequate "signal word panel, safety alert symbol, or signal word," was displayed in the same color as the rest of the text, and lacked a border or other distinctive formatting, such as a different color or distinctive font. Therefore, Dr. Vigilante opines that Defendant "failed to provide the minimum conspicuity enhancing features necessary to attract and motivate the user's attention to the warnings." (Doc. 43-1 at 12). Dr. Vigilante

also found fault with the location of the warnings on the box that contained the candle, and on the bottom of the jar candle itself. Dr. Vigilante states that "both locations are inadequate to capture the attention of users familiar with the product," and suggests that the warning "should have been located so that it interfered with [the consumer's] ability to light the candle." (Doc. 43-1 at 14).

However, as even Dr. Vigilante concedes, the testimony of both Linda Skirvin and Plaintiff Kreuzmann indicates that both women were very familiar with and had actually read the warnings on the bottom of the Seda France jar candles, and that they attempted to comply with those warnings. Therefore, it does not appear that there is any issue of fact concerning proximate causation as to the conspicuity or the location of the warnings in this case. Because the user of the candle in question admits to having seen and read the warnings, despite the allegedly less-than-optimal location and typeface, Defendant is entitled to summary judgment on this aspect of Plaintiffs' failure to warn claim. *See Mohney v. USA Hockey, Inc.*, 300 F. Supp.2d 556, 577-578 (N.D. Ohio 2004)(explaining that a plaintiff must establish that the breach of an alleged duty to warn was the proximate cause of plaintiff's injury).

The more critical issue in this case relates to Dr. Vigilante's opinion that the warning was not sufficiently explicit, because the warning not to leave a candle "unattended" "can be interpreted in many ways and does not inform the reader as to what specific conditions are safe and unsafe." (*Id*. at 15). For example, Plaintiff Kreuzmann testified that she did not consider lighting a candle in the front room and then working in other areas of the store as leaving the candle "unattended" because employees were always aware of the lit candle in the store and that it needed to be extinguished prior to leaving the store. Plaintiffs argue

that the warning failed to notify users that "they are required to always burn the candle *within sight* and that they should always extinguish the candle before leaving the room because a fire can occur while they are gone." (*Id*. at 16, emphasis added). Dr. Vigilante opines that Defendant "failed to adequately communicate the hazards associated with leaving a candle burning out of sight of the user and alone in the room," which he describes as a "non-open or non-obvious" hazard to the average consumer, of which Defendant should have been aware. (Doc. 43-1 at 10).

Dr. Vigilante describes the word "unattended" as a "fuzzy" word that was overly ambiguous and therefore inadequately warned the consumer of the danger that resulted, similar to phrases such as "[u]se with adequate ventilation," and "[a]void prolonged exposure," or "[h]andle carefully." (Doc. 43-1 at 16). Based upon the combination of location, typeface, and "non-explicit" language, Dr. Vigilante opines that the warnings provided "failed to meet applicable warning guidelines and the ANSI Z534.5 and ASTM F 2058 standards for the design of on-product warnings."

ANSI Z534.5 refers to general labeling guidelines for a variety of products and hazards, whereas ASTM F 2058 refers to the standard specification for candle fire safety labeling. ASTM International, the publisher of the candle standard, describes itself as a leader "in the development and delivery of international voluntary consensus standards" used "to improve product quality, enhance safety, facilitate market access and trade, and build consumer confidence." http://www.astm.org/ABOUT/aboutASTM.html. The referenced ASTM standard requires cautionary labeling that includes a warning such as "To Prevent Fire Keep burning Candle within sight," or "burn within sight," but permits

"equivalent" wording,[4] and contains additional guidelines for the design and placement of warnings on candles. Dr. Vigilante states that the standard provides "minimum requirements and notes that additional warnings may be appropriate and are permitted." (Doc. 43-1 at 18). Dr. Vigilante avers that Defendant's failure to comply with ANSI and ASTM guidelines "deprived the Century House of the protection afforded to the public by those guidelines." (Doc. 43-1 at 19). He further opines that Defendant should have known that its consumers, including Plaintiffs, did not know that candles should always be burned within sight, and that Defendant's failure to provide "adequate" warnings about that danger in this case rendered the candle "defective and unreasonably dangerous" and was "a cause" of Plaintiffs' loss. (*Id.*).

Even though the ASTM standard is a "voluntary" one, such standards may be admissible under Ohio law in product liability cases. *See Bailey v. V&O Press Co.,* 770 F.2d 601, 608-609 and n. 5 (6th Cir. 1985)(discussing limited admissibility of safety regulations in strict liability actions, and to prove standards in negligence actions). Based upon Dr. Vigilante's testimony and the ASTM standard,[5] Plaintiffs have presented a genuine issue of material fact concerning whether the warning provided by Defendant was adequate in this case. *See Falkner v. Para-Chem*, 2003 WL 21396693 (Ohio App. 9 Dist. June 18, 2003)(affirming product liability verdict against manufacturer for inadequate warning of risk). Therefore, as to any "failure to warn" claims based on the inadequacy of

---

[4] For example, ASTM F 2058 generally requires packaging to display a warning on the top or sides of the packaging and not on the bottom, unless there is a statement appearing on the top or side (or its equivalent) that reads: "See bottom panel for safety information."

[5] The parties have not briefed the admissibility of the safety standards in this case. Absent any issue as to the admissibility of the evidence having been presented by the parties, the Court assumes the admissibility and relevance of the evidence for purposes of the pending motion.

the warnings provided, Defendant's motion is denied.

### D. Common Law Liability Claims for Negligence Under O.R.C. §2307.71(B).

Defendant also seeks summary judgment on grounds that the enactment of Ohio R.C. §2307.71(B) eliminated common law claims for negligence. Plaintiffs do not contest this argument, and state in their response that such claims are "voluntarily withdrawn."

### E. Implied Warranty of Merchantability

Last, Defendant seeks judgment on Plaintiffs' claim that Defendant breached an implied warranty of merchantability. Although Plaintiffs' memorandum contains a heading that suggests opposition to Defendant's motion on this issue (*see* Doc. 43 at 9, stating that claims "are appropriate"), the argument portion of Plaintiffs' memoranda concedes the issue by stating that this claim is also "voluntarily withdrawn."

### III. Conclusion and Order

For the reasons stated, **IT IS ORDERED THAT:**

Defendant's motion for summary judgment (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Plaintiffs' common law negligence and implied warranty of merchantability claims, as well as to all claims pertaining to Defendant's design, manufacture, assembly, inspection or testing of Defendant's candle or its components, excluding the written warnings placed on the candle or its packaging. As to those warnings, Defendant is entitled to summary judgment concerning the issues of conspicuity and location of the warnings, but not as to the alleged defects in the explicit language of the warnings and any claims pertaining thereto.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge